## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

Patricia D. Dykstra,
Plaintiff
-vs-
Commissioner of Social Security
Administration,
Defendant.

CV-25-8113-PCT-SHD (JFM)

**Report & Recommendation**

Plaintiff seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security who denied her supplemental security income benefits under the Social Security Act.

This matter is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(10), Local Rules of Civil Procedure. [1]

## A.  SUMMARY OF THE CASE

Plaintiff, born in 1985, has asserted that she became disabled as of June 16, 2010,[2] when she was 24 years old, based on a variety of physical and mental impairments. (*See* AR 25 (detailing claims), 31 (dates).)  She has past relevant work as a plastic molding machine setter. (AR 30.)

---

[1] The Administrative Record (Doc. 16, 14) is referenced herein as "AR", and the labelled Exhibits including in the Administrative Record are referenced herein as "Ex. ___." The original filing of Parts 1 through 13 of 26 of the AR (Doc. 13) were rejected by the Clerk as deficient, and was refiled at Doc. 16.)  The briefs are referenced herein as OBr. (Opening Brief, Doc. 17), . (Answering Brief, Doc. 25), and RBr. (Reply Brief, Doc. 26).

[2] Plaintiff had originally alleged an onset date of October 17, 2010, but agreed during the administrative hearing to amend to the protected filing date of June 16, 2010.  (AR 17.)

- 1 -

In a decision issued April 30, 2024, the ALJ found Plaintiff generally eligible for benefits given her non-employment. (AR 20.)  The ALJ found Plaintiff had the following **severe impairments**: migraine headaches, a seizure disorder, right carpal tunnel syndrome, vertigo, asthma, fibromyalgia, degenerative disc disease, bilateral acute chronic cervical and lumbar radiculopathy, and an anxiety disorder. (*Id.*)  The ALJ also found the following **non-severe impairments**: kidney stones. (*Id.* at 20-21.) The ALJ found no combination of impairments that established disability under the **listings**. (*Id.* at 21-22.)

The ALJ further found Plaintiff did not meet the **"Paragraph B" criteria** for mental impairment, finding a moderate limitation in understanding, remembering or applying information, and no limitations in the other 3 criteria. (*Id.* at 22-24.)

The ALJ found Plaintiff had the **residual functional capacity**:

> to perform **medium work** as defined in 20 CFR 416.967(c) except she can lift and/or carry 50 pounds occasionally and 25 pounds frequently. The claimant can stand and/or walk a total of 4 hours in an 8 hour workday. She can sit for a total of 6 hours in an 8 hour workday. The claimant can push and/or pull without limit other than as shown for lift and/or carry. She must avoid concentrated exposure to extreme cold, extreme heat, and fumes, odors, dusts, gases, poor ventilation, etc. The claimant cannot work in a loud work environment, Selected Characteristics of Occupations noise intensity level 4 or greater. She can never climb ladders/ropes/scaffolds and can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger bilaterally. She is limited to simple, repetitive tasks.

(AR 24 (emphasis added).)

Or particular import here, in reaching that conclusion the ALJ: evaluated records of migraines, seizures, and related treatments (AR 26, ¶ 4, 27 ¶ 2);  noting minimal objective findings (*id.*), and a diagnosis of psychogenic non-epileptic but also findings of objective abnormalities tending to show epileptic causes and restrictions based on the mental impairments (AR 29, ¶ 2.)  The latter, however, was discounted as excessive and unsupported. (*Id.*)  Plaintiff's subjective complaints were generally discounted (beyond the determined RFC) as unsupported by objective medical evidence, and inconsistent with treatment notes (AR 30 at ¶ 4).

The ALJ concluded Plaintiff was unable to perform her past relevant work, but

could perform work in the sufficiently available jobs in light, SVP 2 occupations such as Marker (DOT #209.587-034) and sedentary, SVP 2 or 3 occupations such as Telephone Solicitor (DOT #299.357-014). (AR 31.)  Thus, Plaintiff was found to not be disabled.

Plaintiff argues the ALJ erred by failing to adequately explain how he considered the severe impairments of migraine headaches and a seizure disorder: (a) at Step Three (listings) (OBr. at 8-12; and (b) at Step Four by failing to incorporate responsive limitations in the residual function capacity. (OBr. at 12-17.)

Plaintiff seeks a reversal and remand for award of benefits. (OBr. at 17.)

## B.  STANDARDS OF REVIEW

**Reviewed Decision** - in this case, because the Appeals Council denied review, the ALJ's decision is the final decision of the agency, and the decision now under review.  20 C.F.R. § 404.981.

**Bases for Reversal** - The court may set aside the agency's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations, alterations, and citations omitted).

**Limited to ALJ's Reasoning** - In reviewing the ALJ's decision, neither the parties nor the Court can manufacture their own reasons to support the decision made by the ALJ. "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The

grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.  It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

But in identifying the ALJ's reasons, the Court is not constrained solely by the ALJ's organization of his opinion, and can make reasonable inferences reading the decision as a whole.  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**<u>Not Limited to ALJ's Record Citations</u>** – The ALJ is mandated not to provide record citations but to provide reasons.  So long as the purported "*facts*" underlying those reasons find support in the record (and the reasons are legally sufficient), the ALJ's decision must be sustained.  "Thus, it is clear that both this court and the district court may look to any evidence in the record regardless of whether it has been cited by the Appeals Council." *Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). *See also* 4 Soc. Sec. Law & Prac. § 55:67 (2022). Indeed, the reviewing court may reverse "only if the ALJ's decision was not supported by substantial evidence *in the record as a whole*." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (emphasis added).

On the other hand, "[t]hough the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  *See also Connett*, 340 F.3d at 874. Thus, a decision supported only by a bare reference to "the record" would justify remand, even if some portion of the record might support the decision, if the decision did not otherwise make clear the ALJ's reasons.

**<u>Symptoms Testimony</u>** - Absent evidence of malingering, once an ALJ finds that

- 4 -

an impairment could cause the reported symptoms, the ALJ can reject a claimant's symptoms testimony only by providing specific, clear, and convincing reasons for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  Relevant evidence includes such things as "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

**Harmless Error** - "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Molina*, 674 F.3d at 1115.  An error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Harmlessness does not require the court to determine what ultimate decisions the ALJ would have made if the error had not been committed, but only to ask whether the remaining bases for the decision are sufficient to support the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

## C.  APPLICATION OF LAW
### 1.  Arguments

Plaintiff argues the ALJ erred finding Listing 11.02 (epilepsy/primary headache disorder) unmet because the ALJ failed to explain why it was not met or equaled by the Listing, only summarily asserting it was not.  Plaintiff further argues that the ALJ relied on normal MRI findings, when migraines do not reflect on such testing, and such findings are consistent with a primary headache disorder diagnosis. (OBr. at 9-14.)  Plaintiff further argues that the ALJ erred because he failed to account for the migraines or seizures in the

RFC, and conclusory assertions they had been accounted for were insufficient. (*Id.* at 14-17.)

Defendant argues the ALJ properly relied upon: (a) successful treatment (f. at 2-3)[3]; (b) limited and conservative treatment (*id.* at 3-4); (c) persuasive psychological opinions of functional capacity (*id.* at 3-4); and (d) inconsistency with the objective medical evidence, including limited findings on brain imaging and treatment notes reflecting good memory (*id.* at 4-5). Defendant further argues the ALJ's decision was sufficiently specific to show it was not arbitrary (*id.* at 5). Finally, Defendant argues Plaintiff fails to show she met Listing 11.02 because: (1) she declined treatment; (2) the ALJ reasonably discounted her symptoms testimony; (3) any deficiencies in the ALJ's analysis would call for rehearing, not an award (*id.* at 5-6).

Plaintiff replies that Defendant is relying on post hoc rationales not asserted by the ALJ (RBr. at 1, 3), and that Defendant is unable to correlate any specific RFC limitations with Plaintiff's migraines and seizures (*id..* at 1-2). Plaintiff asserts that purported "improvement" from treatment still left her with disabling migraines (*id.* at 2), and no explanation linking purported conservative treatment to the RFC was given by the ALJ (*id.* at 2-3). Plaintiff argues Defendant misstates the record on declining treatment, and there were efficacy, treatment, and financial reasons for declining treatment. (*Id.* at 3-4.) Plaintiff argues Defendant fails to address: (a) the assertions that imaging is an inadequate diagnostic tool for migraines (*id.* at 5); and (b) Plaintiff's analysis of the applicability of Listing 11.02B (*id.* at 6.)

## 2. ALJ's Decision

The ALJ found regarding Plaintiff's migraines and seizure disorder no applicable listing, and the listing for Epilepsy (Listing 11.02) was "the most closely analogous listed impairment," but found no evidence to show Plaintiff's condition "medically equals a

---

[3] The first page of the Answering Brief is unnumbered, resulting in a disparity between the included page number and the actual page number. The undersigned references herein the included page number from the brief.

listing, either individually or in combination with another impairment." (AR 22.)  The ALJ reviewed the applicable standards:

> There are no listing criteria for headaches. However, the undersigned may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing. Epilepsy (listing 11.02) is the most closely analogous listed impairment for a medically determinable impairment (MDI) of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) and may result in her MDI(s) medically equaling the listing. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the following must be considered: a detailed description from an acceptable medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations). To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, the undersigned considers the same factors considered for 11.02B. In addition, the undersigned considers whether the overall effects of the primary headache disorder on functioning results in marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself (SSR 19-4p).

(AR 22.)  But the ALJ then made a conclusory determination:

> Nevertheless, there is no evidence that the claimant's primary headache disorder medically equals a listing, either individually or in combination with another impairment.

(*Id.*)  In reaching that conclusion, the ALJ cited no facts or evidence, and pointed to no specific deficiency in proof.  And there was no preceding evaluation in the ALJ's decision of Plaintiff's migraines and seizures.  Nor was there any succeeding evaluation by the ALJ of the requirements of Listing 11.02.

The ALJ then adopted an RFC (AR 24), and set about offering explanations for it (AR 24-30).  Those explanations addressed Plaintiff's migraines and seizures in four disparate sections.

First, the ALJ listed Plaintiff's migraine headaches and seizure disorder in a laundry list of all her impairments, and asserted a conclusion that "the claimant's treatment-seeking history, diagnostic test results, clinical signs, reported symptoms, medications and other prescribed treatment demonstrate that the claimant's statements about the intensity, persistence, and limiting effects of the alleged symptoms, are inconsistent." (AR 25.)

Second, the ALJ noted Plaintiff sought treatment for migraines in **July, 2021** from Dr. Kaldawi. The ALJ then referenced minimal brain MRI findings and then veered into a discussion of carpal tunnel and pulmonary issues and various "unremarkable" neurologic examination results with no apparent connection to migraines or seizure disorders:

> normal bulk and tone, intact finger-nose-finger testing, normal posture and stance, intact tandem gait, and an ability to walk on her heels and toes.

(AR 25.) Nonetheless, the ALJ observed that her diagnoses included, *inter alia*, "migraine without aura…neuropathy, a somatization disorder, and spells of decreased attentiveness." (*Id*.)

Third, the ALJ noted that Plaintiff "reported having nonepileptic spells and chronic migraines on **November 13, 2021**, when her headaches were improved with Ajovy, with three to four reported migraines per week." (AR 26.) The ALJ then branched off into a discussion of a series of apparently unconnected findings:

> normal neck range of motion, normal muscle bulk, no edema, clear lungs to auscultation, an ability to answer simple questions and follow simple commands, normal bulk and tone, symmetric and full motor strength, intact sensation, and a normal and steady gait …good strength, intact sensation, and a normal gait and station."

(*Id.*)

Fourth, the ALJ noted that Plaintiff continued reporting migraines and nonepileptic seizures in **December 2023**, but again branched off into a discussion of apparently unconnected findings:

> comfortable with a calm and cooperative demeanor, appropriate interaction, normal psychomotor activity, slightly pressured speech, full orientation, an ability to answer questions and follow commands appropriately, fluent and clear speech, normal attention/ concentration, normal recall of recent and remote events, normal

facial sensation, normal hearing, some hypersensitivity to pinprick sensation, normal motor bulk and tone, only mild lower extremity weakness, normal bilateral upper extremity strength, some hypoactive reflexes, intact coordination, only mild difficulty standing, and a casual wide-based gait with the use of canes,

(AR 27.)

### 3.  Listing 11.02 at Least Arguably Met

#### a.    Application of Listings

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1996).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

> At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of Impairments" (referred to as the "listings"). *See* § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A). The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 [ ] (1990) (footnote omitted). If an impairment does not meet a listing, it may nevertheless be "medically equivalent to a listed impairment" if the claimant's "symptoms, signs, and laboratory findings are at least equal in severity to" those of a listed impairment. § 404.1529(d)(3). But a claimant cannot base a claim of equivalence on  symptoms alone. Even if the claimant alleges pain or other symptoms that makes the impairment more severe, the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing. § 404.1529(d)(3). If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled. § 404.1520(d).

*Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020).

- 9 -

The claimant has the burden of proving that his impairments meet or equal a listed impairment. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  However, in determining whether a claimant equals a listing under step three…the ALJ must explain adequately his evaluation." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

### b.    Applicable Listings

The parties are in agreement that Listing 11.02 (Epilepsy) is the relevant listing, and in particular 11.02(B) ("Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)," and 11.02(D) which governs:

> Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following: 1. Physical functioning (see 11.00G3a); or 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or 3. Interacting with others (see 11.00G3b(ii)); or 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 11.02.

That Social Security Ruling addressing migraines provides:

> Primary headache disorder is not a listed impairment in the Listing of Impairments (listings);[24] however, we may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing.[25]

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS of a typical

headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Paragraph D of listing 11.02 requires dyscognitive seizures occurring **at least once every 2 weeks** for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in **marked limitation** in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4P at ¶ 8 (emphasis added).

### c.    ALJ's Reasoning

The ALJ offered no reason why 11.02 did not apply.  He simply concluded it did not.  (AR 22.)  While subsequently in the decision the ALJ addressed Plaintiff's migraines and seizures, nowhere in those discussions did he offer a reason why they did not meet the listings.  (*See* AR 22-27.)  "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

To be sure, Defendant points to various facts referenced in the opinion about Plaintiff's migraines and seizures. In identifying the ALJ's reasons, the Court is not constrained solely by the ALJ's organization of his opinion, and can make reasonable inferences reading the decision as a whole.  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  But Defendant points to no part of the decision to support a reasonable inference that the facts discussed in those sections were the **<u>reason</u>** for the ALJ's decision on the Listings.  The undersigned has found none.

**(1). <u>Sufficiently Specific Reasons on Credibility</u>**

Defendant argues the ALJ's decision was **<u>sufficiently specific</u>** to show it was not arbitrary (*id.* at 5). To the extent that Defendant intends to argue that the relevant standard is whether the court is satisfied that the ALJ did not act arbitrarily, Defendant confuses the standard with its purpose. The references to arbitrary action have their roots in the Ninth Circuit in an observation in *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) that "the standard does not permit a factfinder to arbitrarily discredit a claimant's testimony regarding pain." *See Bunnell*, 947 F.2d at 345 (quoting *Elam*). As recognized in *Bunnell,* the symptoms testimony standard is that "the adjudicator must specifically make findings which support" the conclusion that the testimony is not credible. *Id.* And as clarified in *Trevizo* and its predecessors, those findings must establish "specific, clear and convincing" reasons. 871 F.3d at 678.

Here, the ALJ provided no specific, clear and convincing reasons to discredit Plaintiff's statements on the frequency and effects of her migraine headaches. At best he offered a generic, conclusory statement that "the claimant's treatment-seeking history, diagnostic test results, clinical signs, reported symptoms, medications and other prescribed treatment demonstrate that the claimant's statements about the intensity, persistence, and limiting effects of the alleged symptoms, are inconsistent." (AR 25.) "[E]ven if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006).

**(2). <u>Successful Treatment</u>**

Moreover, the "facts" asserted by Defendant fail to show the Listing did not apply. The Commissioner points to discussions of successful treatment. (f. at 2-3 (citing AR 25-31). But the ALJ's only discussion of successful treatment was in reference to the November 13, 2021 visit, when he observed Plaintiff's headaches were reported "improved with Ajovy, with three to four reported migraines per week." (AR 26.) Improvement itself is insufficient unless the improvement reduces the condition below a

disabling one. *Cf. Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (addressing RFC determination). *See* 20 C.F.R. § 416.994a ("we will disregard [improvement that] could not result in a finding that your disability has ended"). Listing 11.02B (the most stringent portion), only requires relevant events "at least once a week." Plaintiff continued with migraines more frequently, making the achieved improvement irrelevant.

### (3). Limited or Conservative Treatment

Defendant asserts that limited and conservative treatment justified the ALJ's decision. (f. at 3-4 (citing TR 25-27, 958).) Indeed, one form of "evidence [on which an ALJ can rely to find a pain allegation incredible] is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

At **AR 25** the ALJ made a broad assertion with regard to all of Plaintiff's impairments ("from migraine headaches, a seizure disorder, right carpal tunnel syndrome, vertigo, asthma, fibromyalgia, degenerative disc disease, bilateral acute chronic cervical and lumbar radiculopathy, and an anxiety disorder') that her (*inter alia*) "treatment-seeking history…demonstrate that the claimant's statements about the intensity, persistence, and limiting effects of the alleged symptoms are inconsistent." But the ALJ offered no explanation or reference to tie limited and conservative treatment relevant to the determination on the migraines and seizures. Nor did the ALJ reference in other portions of his decision any limited or conservative treatment on such conditions. Thus, there is no inference to be made that limited and conservative treatment was the reason for the ALJ's determination on the Listings regarding Plaintiff's migraines and seizures.

At **AR 27** the ALJ asserted "the claimant's physical residual functional capacity is based on the totality of the evidence, including her conservative medical treatment." But

- 13 -

that assertion was included in a discussion of a single physical examination by a consulting examiner on December 27, 2023 when Plaintiff "would not continue her examination due to reported pain after lifting coins off a table without difficulty." (AR 27 (citing Exh. B30F).) (*See* AR 1475 (Exh. B30F at 3).) But Defendant offers no explanation how this discussion related to Plaintiff's migraine and seizure complaints, nor how it relates to limited or conservative treatment when the exam was explicitly solely for non-treatment purposes. (*See* AR 1473 (Ex. B30F at 1) ("Claimant was advised prior to exam that this is not a complete physical but is an administrative exam and a physician patient relationship has not been established"). And Defendant offers no explanation how this finding was relevant to any of Defendant's impairments, none of which appear to be founded upon physical deficiencies sufficient to preclude lifting coins, as opposed to associated pain.

Defendant also fails to identify any limited or conservative treatment. Instead, Defendant references a record from November 2021 showing that Plaintiff had stopped a treatment that was not working, in favor of continuing with the Ajovy medication that was working. (f. at 3 (citing AR 956).) Defendant fails to explain how stopping an ineffective treatment in favor of an effective one is substantial evidence to reject symptoms testimony. Nor did the ALJ discuss this evidence. Nor did the ALJ engage in any discussion of Plaintiff failing to pursue further treatment with respect to her migraines and seizures. This is so even though the ALJ specifically discussed the note relied on by Defendant. (AR 26 (citing Exh. B13F at 4, i.e., AR 956).)

Defendant points to later portions of the same record showing:

> Discussed Botox injections, however patient declined….Recommend discussed referral to tertiary care center for evaluation at Barrows neurological institute with a headache specialist, however her insurance declined the transport. Subsequently discussed referral for second opinion. Patient would like to think about that and see if she would like to follow-up in Bullhead instead. At this time holding off on referral.

(**AR 958** (referencing 11/13/21 exam by Dr. Ohn).) Again, despite referencing this same visit (AR 26, ¶4), the ALJ did not refer to these matters.

Plaintiff had declined Botox "due to history of questionable MS." (AR 690.) (RBr. at 4.) Defendant offers nothing to suggest this explanation was rejected by the ALJ, or that it was not a reasonable, credible explanation.

Plaintiff declining a referral for care she could not pursue because of financial and logistical reasons (due to insurance refusing to pay for transport) would not have been a valid basis to reject symptoms testimony, had the ALJ intended to do so. "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). "Medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987). Indeed, the record reflects Plaintiff had pursued other treatment options that were rejected by insurance. (*See, e.g.,* AR 690 ("She wanted to start Aimovig. However was not approved by insurance.").)

Plaintiff did not simply decline treatment, but continued with persistent treatment. (*See* AR 665 (Ajovy maintained 3/6/21), AR 764 (Ajovy filled 5/5/21), AR 658 (Ajovy maintained 5/20/21) AR 611, 757 (Ajovy filled 6/1/21), AR 651 (Ajovy maintained 6/10/21), AR 752 (Ajovy filled 6/27/21), AR 747 (Ajovy filled 8/4/21), AR 958, 969 Ajovy continued 11/13/21), AR 1031 (Ajovy confirmed 1/10/22), AR 1005 (Ajovy filled 1/23/22), AR 998 (Ajovy filled 3/20/22), AR 1052 (Ajovy confirmed 4/12/22), AR 1063 (Ajovy confirmed 4/26/22), AR 986 (Ajovy filled 6/22/22), AR 1028 (Ajovy affirmed 9/4/22), AR 1068, 1131(Ajovy entered 9/7/22), AR 1017 (Ajovy affirmed 9/19/22), AR 1068 Ajovy confirmed 9/28/22), AR 1280 (Ajovy filled 12/10/22), AR 1268, 1274 (Ajovy refilled 1/7/23), AR 1119 (Ajovy filled 2/27/23), AR 1256 (Ajovy filled 4/21/23), AR 1262 (Ajovy filled 4/27/23), AR 1113, 1243 (Ajovy filled 5/18/23), AR 1345 (Ajovy confirmed 6/19/23), AR 1237 (Ajovy filled 8/27/23), AR 1361 (Ajovy confirmed 9/5/23), AR 1480, 1483 (Ajovy filled 11/22/23), AR 1490, 1499, 1508 (Ajovy confirmed 12/29/23).) Moreover, it was noted she had tried other medications and had adverse reactions to some, including sumatriptan and rizatriptan (AR 1357), and limited/minimal

- 15 -

response to others, including Floricet and Ubrelvy (AR 1495).

Finally, the ALJ made no effort to develop why Plaintiff did not seek treatments the ALJ believed should have been pursued.

> Where the treating source has prescribed treatment clearly expected to restore ability to engage in any SGA (or gainful activity, as appropriate), but the disabled individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment prescribed.
>
> *Development With the Claimant or Beneficiary*--The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal.
>
> The record must reflect as clearly and accurately as possible the claimant's or beneficiary's reason(s) for failing to follow the prescribed treatment.
>
> Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without the treatment prescribed. The individuals should be encouraged to express in their own words why the recommended treatment has not been followed.

*Titles II & XVII: Failure to Follow Prescribed Treatment*, SSR 82-59 (S.S.A. 1982). The undersigned has found no such development of the record. Instead, Defendant is now attempting to rely on such matters for the first time on judicial appeal.

### (4). <u>Psychological Impairments</u>

Defendant argues that the ALJ could have relied on persuasive psychological opinions of functional capacity as a reason to find the Listing not met. (f. at 3-4.) But Defendant offers nothing to show ALJ did rely on this reason. Moreover, meeting psychological criteria is not required to meet Listing 11.02B, and even Listing 11.02D can be met by physical impairment without psychological impairment. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 11.02D ("a marked limitation in one of the following: 1. Physical functioning (see 11.00G3a); or…").

"To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also

consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: ***Physical functioning***; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; ***or*** adapting or managing oneself." *Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P (S.S.A. Aug. 26, 2019) (emphasis added).

### (5).  Brain Imaging

Citing a correlation between migraines and resulting forgetfulness, Defendant argues that the ALJ properly relied on inconsistency with the objective medical evidence, including limited findings on brain imaging and treatment notes reflecting good memory (f. at 4-5).  But Defendant offers nothing to show that brain imaging would reflect migraines.  Indeed, the Agency recognizes that "an unremarkable MRI is consistent with a primary headache disorder diagnosis" and identifies imaging as only a means of ruling out other possible causes of headaches.  *Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P (S.S.A. Aug. 26, 2019).[4]

### (6).  Good Memory

As for good memory, Defendant cites AR 26, 51 and 739 for the proposition that Plaintiff contended the migraines and memory loss were related.  But **AR 26** makes no such correlation, and cites memory loss as only one of Plaintiff's many complaints at a July 21, 2021 visit, many of which were plainly unconnected, including "carpal tunnel pain, discoloration in her hands and feet, forgetfulness."  (AR 26 (citing Ex. B9F at 17-18).)  The cited record merely noted that Plaintiff complained, under "Cognition," that Plaintiff was "Noticing she is misplacing items." (AR 740 (Ex. B9F at 18.)  Plaintiff made no assertion of a correlation of that condition to her migraines, nor did the provider.

At **AR 51**, the ALJ inquired about Plaintiff's memory problems:

> Q And what do you think your memory problems are a result of?
> A I, honestly, a good bit is like due to migraines. The seizures will cause memory lapses. Sometimes that's the only way that I know

---

[4] Cited by Plaintiff as "SSR 24-3p."  (RBr. at 5.)

> I've had a seizure because it will be I will be like watching a movie and the last part that I remember of the movie, it's like the movie got cut sliced in the wrong place.
>
> Because if it's a movie I've seen several times I'll go from okay, this is the last part of the move I remember, but it will be like somebody fast forwarded it while my eyes were closed, you know, because it will be at a completely different part when I come out of the seizure, and I'm like oh, crap.

(AR 51.)  While Plaintiff referenced the migraines, the bulk of her statements correlated the memory loss to seizures.  To the extent that the ALJ relied on medical records reflecting observations of "good memory,"  Defendant fails to explain how memory evaluations during the course of exam would be expected to reflect memory loss due to migraines or seizures, if they did not occur during the examination.

**AR 739**, a preceding portion of the record referenced by the ALJ at AR 26, contains no apparent reference to memory loss.

## D.  STEP FOUR – RESIDUAL FUNCTIONAL CAPACITY

Plaintiff further contends that the ALJ's errors at Step Three regarding her migraines and seizures continued into the Step Four RFC analysis, where the ALJ included no limitations in the RFC responsive to this "severe impairment."  Defendant relies upon the foregoing assertions about the ALJ's discrediting of Plaintiff's symptoms testimony regarding this impairment.  For the reasons discussed hereinabove, the ALJ failed to support that rejection with specific, clear and convincing reasons supported by substantial evidence. *See Trevizo*, 871 F.3d at 678.  Apart from the unsupported credibility determination, Defendant points to, and the undersigned has found, no portion of the ALJ's RFC analysis that accounts for Plaintiff's migraine symptoms testimony.

## E.  HARMLESSNESS

The undersigned concludes the ALJ relied on reasons that fail to meet the standard of specific, clear and convincing reasons supported by substantial evidence to reject Plaintiff's symptoms testimony regarding her migraines and seizures, and thus failed to adequately explain at Step 3 the failure to find Plaintiff met Listing 11.02, or to account at

- 18 -

Step 4 for the resulting severe impairments in developing an RFC.

However, harmless error principles apply in the Social Security context. *Molina,* 674 F.3d at 1115. Here, apart from arguing the absence of error, Defendant urges no basis for the Court to conclude the error was harmless.   The undesigned concludes it was not. If Plaintiff's symptoms testimony regarding her migraines and seizures were credited, Plaintiff would have been entitled to a determination of disability under the Listings, and Defendant proposes no basis on which the Court could conclude the remaining RFC would have supported employability.

Accordingly, the decision must be reversed.

## F.  APPROPRIATE REMEDY

Upon review of the Commissioner's decision denying benefits, this Court has "power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner  of Social Security,  with  or  without  remanding  the  cause  for  a rehearing." 42 U.S.C. § 405(g).  Plaintiff argues for a remand for award of benefits.

"[I]n appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). The Ninth Circuit applies the credit-as-true rule, which requires the following three factors to be satisfied for an immediate award of benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Id.* at 1020. Courts may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*.  Plaintiff has met the last two requirements under this standard.  Even so,  if additional proceedings can remedy defects in the original administrative proceeding,

a Social Security case usually should be remanded. *Id.*

Here, the undersigned concludes that additional proceedings may be able to remedy the defects in the proceeding. For example, the ALJ may be able to develop a record regarding Plaintiff's failure to seek additional treatment for her migraines and seizures, including the expected efficacy of such treatment and Plaintiff's reasons for not pursuing it.

## G. CONCLUSION

IT IS THEREFORE RECOMMENDED:

(A) The final decision of the Commissioner of Social Security be **REVERSED**.

(B) This matter be **REMANDED** to the Commissioner for **REHEARING**.

(C) The Clerk be directed to enter judgment accordingly.

### EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(en banc), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

The parties are also cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless

otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: May 15, 2026

25-8113r RR 26 05 05 re SSA Appeal.docx

James F. Metcalf
United States Magistrate Judge